# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| DONALD DALE BERRY, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 2:19-cv-01510-LSC-HNJ |
| SHERRIFF MARK MOON, et al., | ) |
| Defendants. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The plaintiff, a prisoner in the Blount County Jail, has filed a *pro se* complaint on the forms normally utilized by prisoners seeking damages or injunctive relief under 42 U.S.C. § 1983. He complaint includes, *inter alia*, an allegation that he is not being properly treated for an aortic aneurysm and uncontrolled hypertension. (Doc. 1). On October 1, 2019, he submitted a pleading titled "Motion for Emergency and Immediate Intervention," (doc. 5), in which he alleged his aneurysm had grown to 5.0 centimeters and that he was "in need of immediate repair by open heart surgery." (*Id.* at 2). He stated that the jail medical staff's inability to control his hypertension was causing the aneurysm to grow larger, which could cause a rupture and death. (*Id.* at 2). The court construed the plaintiff's pleading as a motion for preliminary injunction and ordered the defendants identified as Sheriff Mark Moon, Nurse Amber Brown, Nurse Debbie

Rudy, and Dr. Frantczy Ceneus, as well as the Blount County Jail's Chief Medical Officer, to provide the court with a preliminary special report addressing the plaintiff's claims. (Doc. 6).

## BACKGROUND

On October 11, 2019, Dr. Ceneus, Nurse Brown, and Nurse Rudy submitted a preliminary special report (doc. 9), along with their own affidavits, addressing the claims asserted in the plaintiff's motion.[1]  Dr. Ceneus testifies that the plaintiff was booked into the Blount County Jail on June 12, 2019, and that he first saw the plaintiff in the jail medical office on June 17, 2019. (Doc. 9-1 at 3, ¶ 6 & 5 ¶ 11).  Dr. Ceneus noted the plaintiff's history of coronary artery disease, coronary artery bypass surgery, hypertension, heart attack, and an aortic aneurysm measuring 4.2 centimeters. (*Id.*).

After being found unresponsive by correctional officers, the plaintiff was transported to St. Vincent's Hospital in Birmingham on June 24, 2019. (Doc. 9-1 at 5, ¶¶ 12-13).  An MRI revealed that the plaintiff had suffered a recent stroke resulting in left side upper extremity weakness. (*Id.*).  The plaintiff was prescribed several medications and scheduled for discharge on June 26, 2019. (*Id.*).  However, his discharge was delayed because he "voiced suicidal ideations," requiring a psychiatric consult. (*Id.*).

---

[1] In conjunction with the preliminary special report, the defendants have submitted a motion to file Exhibit 4, the plaintiff's jail medical records, under seal. (Doc. 8).  The motion is **GRANTED**.  The Clerk is **DIRECTED** to ensure that the plaintiff's jail medical records (doc. 9-4) remain under seal and unavailable for viewing by the public or by anyone other than authorized persons.

2

He was eventually discharged on June 28, 2019, and returned to the jail, where he was seen by Nurse Judy who administered his medications and instructed the dietary staff to serve him a soft diet. (*Id.* at ¶ 14). The next two days the plaintiff refused to take his medications, stating that it was a "way to get out of here and go to the hospital." (*Id.* at 6, ¶¶ 15-16).[2] The plaintiff again refused his morning medications on August 13, 2019, and spit out his medication on August 14, 2019. (*Id.* at 7, ¶¶ 20-21).

Dr. Ceneus performed a physical examination of the plaintiff on July 5, 2019, and noted decreased strength in the plaintiff's left upper arm and left leg, ostensibly due to the recent stroke. (Doc. 9-1 at 6, ¶ 18). At that time, Dr. Ceneus ordered aspirin, lisinopril, Lipitor, Keppra, and metoprolol. During the July 2019 consult, the plaintiff also received sertraline (antidepressant) and atorvastatin for hyperlipidemia. (*Id.* at ¶ 19).

On August 15, 2019, the plaintiff complained of chest pain and was taken to the emergency department of St. Vincent's Blount, in Oneonta, Alabama. (Doc. 9-1 at 7, ¶ 22). A CT angiography test indicated the plaintiff's ascending aorta measured an average of 4.4 centimeters, which was slightly larger than the previous measurement, but the emergency room physician noted that the aneurysm was stable. (*Id.*). However, the plaintiff was urged to follow up with a cardiovascular surgeon to "address and

---

[2] At that point, the plaintiff had been prescribed the following medications: isosorbide mononitrate for chest pain; lisinopril for hypertension; aspirin to prevent blood clots; metoprolol for hypertension and chest pain; Clonodine for hypertension; Tylenol for pain; the antidepressant sertraline; atorvastatin for hyperlipidemia; and Keppra for seizure prevention. (Doc. 9-1 at 6, ¶ 17).

monitor" his aortic aneurysm. (*Id.* & ¶ 23). The plaintiff was discharged that same day with a diagnosis of hypertensive urgency and non-specific chest pain after an electrocardiogram revealed no acute ischemic changes. (*Id.*). After admitting that he had been refusing and spitting out his blood pressure medications, the discharging physician urged the plaintiff to take his medication as prescribed, and warned him that "skipping doses puts you at risk for problems." (*Id.* at ¶ 24).

Upon his return to the jail on August 15, the plaintiff was seen by Dr. Ceneus, who directed that an appointment be made for the plaintiff to be seen by a cardiologist, Dr. Raashid Ashraf. (Doc. 9-1 at 8, ¶¶ 26-27). An appointment was scheduled for October 15, 2019. (*Id.*). In the meantime, the plaintiff continues to receive aspirin; levetiracetam (seizure medication); lisinopril; metoprolol; sertraline, acetaminophen; simvastatin; and isosorbide mononitrate. (*Id.* at ¶¶ 29-30).

Dr. Ceneus testifies that he specializes in internal medicine, is trained in the treatment of hypertension and coronary disease, and has treated patients with aortic aneurysms. (Doc. 9-1 at 9, ¶ 31). He states unequivocally that "[t]he mere presence of an abdominal aortic aneurysm *does not constitute a medical emergency*," that it is appropriate to monitor an aneurysm until such time as it reaches a size that requires surgical repair, and that in his professional opinion an aneurysm the size of 4.4 centimeters "*does not constitute an immediate medical emergency.*" (*Id.*) (emphasis added). However, Dr. Ceneus concedes that he will defer to Dr. Ashraf regarding the decision to continue monitoring or to perform a surgical repair of the plaintiff's aneurysm. (*Id.* at ¶ 32). With regard to

4

the hypertension issue, Dr. Ceneus states that the plaintiff has received "significant treatment, monitoring and medication for his hypertension," but that his treatment "is complicated by his noncompliance with his medication regimen." (*Id.* at ¶ 33).

## ANALYSIS

A temporary restraining order or preliminary injunction is "an extraordinary and drastic remedy" the grant of which "is the exception rather than the rule." *United States v. Lambert*, 695 F.2d 536, 539 (11th Cir. 1983). Preliminary injunctive relief is appropriate only when the moving party establishes 1.) that he has a substantial likelihood of success on the merits; 2.) that irreparable injury will occur absent the issuance of injunctive relief; 3.) that the threatened injury to the moving party outweighs whatever damage the injunction would cause the opposing party; and 4.) the public interest would not be harmed by the injunction. *Cate v. Oldham*, 707 F.2d 1176, 1185 (11th Cir. 1983). It is therefore incumbent upon the plaintiff to provide specific facts which show he faces imminent and irreparable injury absent this court's intervention. He has failed to meet this burden.

Although it is conceded that the plaintiff suffers from hypertension and an aortic aneurysm, the record clearly indicates that he continues to receive extensive medical care for both conditions, and there is nothing before the court which demonstrates the plaintiff is in *imminent* danger of injury. Dr. Ceneus confirms that the present state of the plaintiff's aneurysm does not presently present an immediate danger and that further care for that condition is being provided through an outside cardiologist. Furthermore,

5

the record reflects that the plaintiff's hypertension is being addressed in a timely manner and that any failure to control that condition is likely due to his lack of cooperation in that effort.

The plaintiff has standing to seek preliminary injunctive relief only when the danger to him is "real and immediate," as opposed to merely conjectural or hypothetical. *Shotz v. Cates*, 256 F.3d 1077 (11th Cir. 2001). The record presently before the court fails to establish an immediate need for the court's intervention, as there is no evidence of irreparable injury in the absence thereof. Furthermore, the ongoing care received by the plaintiff demonstrates he is unlikely to succeed on the merits of an Eighth Amendment medical claim.

In addition, the plaintiff has failed to show that the potential harm he faces outweighs the adverse impact that preliminary injunctive relief would have on the public's interest in the efficient administration of the prison system. "In the prison context, a request for injunctive relief must always be viewed with great caution because judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995). Our courts recognize that they are "ill equipped to deal with the increasingly urgent problems of prison administration," and therefore must "accord deference" to prison authorities in the day to day management of prisons. *Prison Legal News v. McDonough*, 200 Fed.Appx. 873, 877 (11th Cir 2006). Although the court is mindful of its responsibility to protect the rights of incarcerated persons, "the operation of our

6

correctional facilities is peculiarly the province of the Legislative and Executive Branches of Government, not the Judicial." *Evans v. Stephens*, 407 F.3d 1272, 1290 (11th Circuit 2005) (*quoting Bell v. Wolfish*, 441 U.S. 520, 548 (1979)).[3] Therefore, the issuance of a preliminary injunction in this matter has the potential to adversely impact the Blount County Jail administration's already difficult task in maintaining and operating a secure and safe detention facility. Absent a showing of imminent and irreparable injury, this court should generally refrain from becoming "enmeshed in the minutiae of prison operations." *Hamm v. Dekalb County*, 774 F.2d 1567, 1573 (11th Cir. 1985) (citing *Bell v. Wolfish*, 441 U.S. 520, 562 (1979) and *Jones v. Diamond*, 636 F.2d 1364, 1368 (5th Cir. 1981)).

## RECOMMENDATION

Pursuant to the foregoing, the magistrate judge recommends the plaintiff's "Motion for Emergency and Immediate Intervention" (doc. 5) be **DENIED**.

## NOTICE OF RIGHT TO OBJECT

---

[3] This is true even with regard to the decisions made by the jail medical staff. *See Freeman v. Department of Corrections*, 447 F. App'x 385, 389 (3rd Cir. 2011) ("[C]ourts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment, which remains a question of sound professional judgment.") (*quoting Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir.1979)) (internal alterations and quotations omitted); *Smith v. Florida Dept. Of Corrections*, 375 F. App'x 905, 910 (11th Cir. 2010) ("[W]hether governmental actors should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment") (*quoting Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir.1995)).

Any party may file specific written objections to this report and recommendation. A party must file any objections with the Clerk of Court within fourteen (14) calendar days from the date the report and recommendation is entered. Objections should specifically identify all findings of fact and recommendations to which objection is made and the specific basis for objecting. Objections also should specifically identify all claims or assertions contained in the Motion for Emergency and Immediate Intervention, (doc. 5), or the preliminary special report, (doc. 9), that the report and recommendation fails to address. Objections should not contain new allegations, present additional evidence, or repeat legal arguments.

Failing to object to factual and legal conclusions contained in the magistrate judge's findings or recommendations waives the right to challenge on appeal those same conclusions adopted in the district court's order. In the absence of a proper objection, however, the court may review on appeal for plain error the un-objected- to factual and legal conclusions if necessary in the interests of justice. 11th Cir. R. 3-1.

On receipt of objections, a United States District Judge will review de novo those portions of the report and recommendation to which specific objection is made and may accept, reject, or modify in whole or in part, the undersigned's findings of fact and recommendations. The district judge also may refer this action back to the undersigned with instructions for further proceedings.

The plaintiff may not appeal the magistrate judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. The plaintiff may only appeal from a final judgment entered by a district judge.

The Clerk is DIRECTED to serve a copy of this report and recommendation upon the plaintiff and upon counsel of record.

**DONE** this 16th day of October, 2019.

HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE